## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LAINEY ANN RIVERA,

      **Plaintiff,**

      **v.**

SAM'S CLUB HUMACAO, et al.,

      **Defendants.**

                        **Civil No. 16-2307 (ADC)**

## <u>OPINION AND ORDER</u>

There are several pending matters before the Court in this case. Defendant Wal-Mart of Puerto Rico, Inc., d/b/a Sam's Club Humacao ("Wal-Mart") filed a motion for summary judgment. **ECF No. 37**. Plaintiff Lainey Ann Rivera ("plaintiff") filed a response in opposition. **ECF No. 48**. Wal-Mart filed a surreply after seeking leave of the Court. **ECF No. 55**. Plaintiff also filed a motion for sanctions due to spoliation of evidence simultaneously with her opposition to summary judgment. **ECF No. 47**. Wal-Mart opposed the motion for sanctions. **ECF No. 54**.

Prior to ruling on summary judgment, the Court referred the spoliation matter to a Magistrate Judge for mediation, evaluation, and adjudication as deemed appropriate. **ECF No. 57**. The Court subsequently referred the summary judgment motion for a report and recommendation ("R&R") based on the interrelationship of issues between the two motions. **ECF No. 68**. The Magistrate's R&R recommends granting summary judgment in favor of Wal-

Mart, which would moot plaintiff's spoliation motion. **ECF No. 69**. Plaintiff timely objected to the R&R. **ECF No. 70**. Wal-Mart filed a response to plaintiff's objection. **ECF No. 71**.

For the reasons explained below, the Court hereby **REJECTS** the R&R. **ECF No. 69**. The motion for summary judgment at **ECF No. 37** is **DENIED** and the motion for sanctions based on spoliation of evidence at **ECF No. 47** is **GRANTED**.

## I.  Background

The question at the heart of this negligence case is how plaintiff's father, Roberto Eric Rivera-Mojica ("Roberto"[1]), fell while visiting a Sam's Club warehouse in Humacao, Puerto Rico. Upon returning home from Sam's Club, Roberto experienced several seizures and lost consciousness. Two days later, he died in a hospital from a cerebral hemorrhage. **ECF No. 1.**

### A.  Undisputed Facts[2]

1. Wal-Mart of Puerto Rico, Inc. is a domestic corporation that does business as Sam's Club in Puerto Rico, which is one of the several business formats that Wal-Mart uses in Puerto Rico. **ECF Nos. 37-9** at 1; **48** at 6.

2. Wal-Mart owns and operates the Sam's Club warehouses in Puerto Rico, including the one located at the Humacao Plaza in Humacao. **ECF Nos. 37-9** at 2; **48** at 6.

---

[1] Because several individuals in this case are related and share last names, the Court refers to those individuals by their first name. And, to ensure clarity, the Court refers to the Wal-Mart and Sam's Club employees by their job titles, rather than their names.

[2] The Court adopts most of the undisputed facts contained in the R&R and restates those facts here.

3. Roberto and his mother, plaintiff's grandmother, Ada Mojica ("Ada"), visited the Sam's Club in Humacao Plaza on Tuesday, July 14, 2015, arriving around 2:00 p.m. **ECF Nos. 37-9** at 11; **48** at 6. Plaintiff was not in Puerto Rico this day. **ECF Nos. 37-9** at 7; **48** at 10.

4. Roberto drove Ada and himself to Sam's Club. **ECF No. 48** at 6.

5. Roberto and Ada were at Sam's Club for about two hours. *Id.*

6. At Roberto's behest, he and Ada looked at a patio swing on display in the front of the store, near the cash registers. That day was the first time Ada saw this swing. **ECF Nos. 37-9** at 2; **48** at 6.

7. Roberto sat on the swing while Ada used the restroom. **ECF Nos. 37-9** at 2–3; **48** at 6.

8. Ada did not notice anything abnormal about the swing, but she was not paying attention to whether there was anything abnormal about the swing. **ECF Nos. 37-9** at 3; **48** at 6.

9. When Ada returned from the restroom, approximately five minutes later, Roberto was lying on the floor, face up, underneath the swing, with the seat of the swing hovering above his chest. Ada did not see Roberto's fall. **ECF Nos. 37-9** at 3; **48** at 7.

10. Yojaris Cruz-Castro ("Supervisor") was a Front-End Supervisor at Sam's Club working on the day of the incident. She did not see Roberto's fall, but she ran to attend to him after she heard people yelling for her. **ECF Nos. 37-9** at 5–6; **48** at 8–9.

11. Supervisor saw Roberto lying on the floor under the swing. She called a manager for assistance. **ECF Nos. 37-9** at 6; **48** at 9.

12. Cashiers and customers moved the swing off of Roberto. Supervisor helped him to a chair and gave him rubbing alcohol to aid with his dizziness. **ECF Nos. 37-9** at 6; **48** at 9.

13. Luis Robles ("Assistant Manager") was an Assistant Store Manager for Sam's Club working that day and he arrived at the scene of the incident in response to Supervisor's call. **ECF Nos. 37-9** at 5; **48** at 9.

14. Supervisor was not present when Assistant Manager spoke with Roberto and Ada. **ECF Nos. 37-9** at 6; **48** at 9–10.

15. An incident report was not completed while Roberto and Ada were at the store. **ECF Nos. 37-9** at 6; **48** at 10.

16. Ada did not talk about the condition of the swing to any of the people that she spoke to at Sam's Club on the day of the incident. **ECF Nos. 37-9** at 7; **48** at 10.

17. Ada paid for their items at Sam's Club and the two left the store. Ada drove the car and stopped at a nearby Wal-Mart to conduct a brief errand, during which time Roberto stayed in the car. After that, they went home. **ECF Nos. 37-9** at 4; **48** at 8.

18. Wal-Mart does not contest that Ada filed an incident report with the police on July 19, 2015. The report described a fall at Sam's Club. **ECF Nos. 37-9; 42-1**.

19. Wal-Mart does not contest that Ada filed an incident report at Wal-Mart within two weeks of Roberto's fall. **ECF Nos. 37-9** at 7; **47** at 8; **54** at 5.

20. Wal-Mart does not contest plaintiff's assertion that the Sam's Club anticipated customers would engage with the display swing but had not placed any signs around the swing despite its obvious potential for injury. **ECF Nos. 1; 47-3** at 21.

B.     **Disputed Facts**

The parties dispute whether Supervisor or Assistant Manager ever offered Roberto an ambulance or an opportunity to complete a written statement **ECF No. 48** at 10. They also dispute what visible signs of injury Roberto exhibited after his fall. In its proposed uncontested facts, Wal-Mart focused on Ada's statement that she did not notice any visible injuries when she returned from the restroom. Plaintiff opposed, noting that Ada described Roberto as complaining of leg pain immediately after the incident, of needing to hold onto the shopping cart for walking-assistance, and of feeling too unwell to exit the vehicle during their brief errand before returning home. Plaintiff also noted that Supervisor described Roberto as limping, dizzy, and talking slowly after the fall, while both Supervisor and Assistant Manager observed a red welt on the back of Roberto's head after the fall. **ECF Nos. 37-4** at 13, 18; **47-1** at 19; **48** at 7–8. The Humacao Sam's Club Store Manager, José I. Ayerdi-Santiago ("Manager") recalled that Supervisor said Roberto was "clutching his belly" after his fall. **ECF No. 48-1** at 4.

Wal-Mart also omits the completion of this narrative from its statement of uncontested facts. According to plaintiff, Roberto returned home and experienced severe pain in his left leg and hip, lightheadedness, disorientation, and several seizures before losing consciousness. **ECF No. 1** at 4–5. An ambulance transported Roberto from his home to Ryder Memorial Hospital. *Id.*

at 5. The providers at Ryder Memorial Hospital transferred him to Puerto Rico Medical Center, where, two days after his fall, doctors diagnosed Roberto as brain dead and removed him from life support. *Id.* Upon learning of Roberto's death, Supervisor and Manager visited Roberto's family to pay their condolences and offer to help with the funeral, during which time Ada told them that the swing caused Roberto's fall while another family member noted that Roberto had difficulty walking. **ECF Nos. 48-1** at 9-11; **48-4** at 8, 12. Sometime after the incident, Ada returned to Sam's Club to complete an incident report. **ECF Nos. 37-5** at 8; **48-7** at 10.

C.      **Procedural Background**

Plaintiff filed the underlying complaint based on diversity jurisdiction, seeking damages for Wal-Mart's negligence on the theory that a defective swing caused Roberto's fall and subsequent death. **ECF No. 1**. Specifically, plaintiff's complaint alleges that "co-defendants failed to exercise reasonable care to consider the foreseeable consequences of having a faulty manufactured or assembled swing exposed for use by customers, and/or encouraging its use, while having it [on] display without further warnings." *Id.* at 6. Wal-Mart answered the complaint and subsequently moved for summary judgment based on its assertion that plaintiff lacks admissible, non-hearsay evidence to prove the causation element of her negligence claim. **ECF No. 37-1** at 21–23. Wal-Mart relies on the lack of eyewitness testimony, surveillance footage, and evidence establishing that the swing was defective or defectively assembled. *Id.* Plaintiff opposed the motion for summary judgment and concurrently filed a separate motion for sanctions due to spoliation of evidence, arguing that Wal-Mart intentionally destroyed relevant

surveillance footage, the swing, and any documents it created in relation to an internal investigation of the incident. **ECF Nos. 48** at 4; **47**.

## II. Report & Recommendation Standard of Review

Magistrate judges are granted authority to make recommendations on summary judgment motions, but the ultimate resolution of dispositive motions remains at the discretion of the presiding judge. *See* Fed. R. Civ. P. 72; *accord* Loc. Civ. R. 72(a)(4). A party may object to the magistrate's findings and recommendations within a specified timeframe. Fed. R. Civ. P. 72(b)(2). The presiding district judge must review "de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. R. 72(b)(3). In conducting this review, the district judge is free to "accept, reject, or modify the recommended disposition." *Id*.

Plaintiff timely objected to the R&R, specifically challenging its findings of facts and the disposition of the intertwined summary judgment and spoliation issues, as well as the R&R's conclusion that plaintiff lacks admissible evidence in support of causation.[3] **ECF No. 70**.

## III. Summary Judgment Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. United*

---

[3] The R&R did not address the merits of plaintiff's spoliation motion based on the recommendation that summary judgment be granted, thereby mooting the spoliation issues. **ECF No. 69** at 15–16.

*States Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Facts not properly controverted in accordance with Local Civil Rule 56 "shall be deemed admitted." *See Puerto Rico Am. Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 130–31 (1st Cir. 2010). All reasonable inferences are drawn in favor of the non-moving party. *Collazo-Rosado v. University of P.R.*, 765 F.3d 86, 92 (1st Cir. 2014). "[T]he burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).

"[T]o survive summary judgment a plaintiff is not required to rely only on uncontradicted evidence." *Calero-Cerezo*, 355 F.3d at 19 (emphasis omitted). When "the record as a whole presents many inconsistencies, displaying perspectives that favor in some lights the defendants and in others the plaintiff," and "plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Id*. "It is black-letter law that hearsay evidence cannot be considered on summary judgment." *Dávila v. Corporación De P.R. Para La Difusión Pública*, 498 F.3d 9, 17 (1st Cir. 2007).

## IV.    Summary Judgment Analysis

Plaintiff's complaint asserts a single claim for recovery based on Wal-Mart's alleged negligence. **ECF No. 1**. "It is a black-letter rule that state substantive law supplies the rules of decision for a federal court sitting in diversity jurisdiction." *Lexington Ins. Co. v. General Accident Ins. Co. of Am.*, 338 F.3d 42, 46 (1st Cir. 2003).

Under Article 1802 of Puerto Rico's Civil Code, recovery of tort damages requires a showing that the defendant "by an act or omission cause[d] damage to another through fault or negligence." P.R. Laws Ann. tit. 31, § 5141. In order to establish negligence under Puerto Rico law, a party must show: "(1) the presence of a physical or emotional damage; (2) that the damage arose as a consequence of a negligent or intentional act or omission of the defendant; and (3) that there is a causal nexus between the damage suffered and said act or omission." *Torres v. K-Mart Corp.*, 233 F.Supp.2d 273, 277–78 (D.P.R. 2002) (citation omitted). "[N]egligence for omission arises for not anticipating such damage that a reasonable, prudent person would rationally foresee if the duty was not fulfilled." *Id*. at 278.

Wal-Mart contends that plaintiff lacks any admissible evidence to prove that a defective swing caused Roberto's fall because (1) no one witnessed Roberto's fall, (2) there is no surveillance footage of the fall, and (3) there is no evidence that the swing was defective.[4] **ECF No. 37-1** at 8, 21. Wal-Mart argues that the only evidence that the swing was defective, thereby causing Roberto's fall is Ada's hearsay deposition testimony that Roberto told her that a problem with the swing caused his fall and plaintiff's double hearsay testimony of the same. Similarly, Wal-Mart asserts that plaintiff may not rely on a hospital file that states the swing caused

---

[4] Wal-Mart also suggests that plaintiff's case proposes a theory of *res ipsa loquitor*, which it asserts has been "abrogated" in Puerto Rico by *Bacó v. Almacén Ramón Rosa Delgado Inc.*, 151 D.P.R. 711 (2000). **ECF No. 37-1** at 12 (no English translation provided). The Court finds this argument disingenuous. Plaintiff proposed a theory of negligence based on a defect in the swing and/or failure to warn. **ECF No. 1**. To the extent her claim may now fall under the rubric of *res ipsa loquitor*, it is purely because of Wal-Mart's actions. *See supra* § IV.

Roberto's fall because that statement also constitutes double hearsay; Roberto was not conscious at the hospital. *Id.* at 22.

Wal-Mart's hearsay argument, which constitutes the crux of its motion for summary judgment, is conclusory and lacking in analysis under the applicable hearsay rules and exceptions. The Court is not convinced, based on the undisputed evidence, as well as the evidence Wal-Mart failed to specifically controvert, that Roberto's statements to Ada after his fall necessarily constitute inadmissible hearsay. The Magistrate Judge also did not consider the applicable hearsay exceptions in the R&R. Based on the record available, the Court finds that Roberto's statements to Ada would be admissible under either the present sense impression or excited utterance hearsay exceptions. *See* Fed. R. Evid. 803(1)–(2).

A "present sense impression" is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." *Id*. R. 803(1). "The underlying theory of [the present sense impression exception] is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation," and, when "the witness is not the declarant, [s]he may be examined as to the circumstances as an aid in evaluating the statement." *Id*. (Advisory Committee Notes). In most situations, "the declarant and the witness experience [the event or condition] under the same or nearly the same conditions"; "[t]he declarant makes a statement describing the event at or very near the time of the observation and that statement is heard by the witness." *United States v. McElroy*, 587 F.3d 73, 86 (1st Cir. 2009). "There is no question that the declarant has firsthand

knowledge of the occurrence" and that the witness "also experienced, at least to some degree, the situation under which the statement was made." *Id*. Moreover, because "precise contemporaneity is not possible" in "many, if not most, instances," "a slight lapse is allowable" between the timing of the event and the statement. Fed. R. Evid. 803(1) (Advisory Committee Notes). *See Kenney v. Floyd*, 700 F.3d 604, 609 (1st Cir. 2012) (holding that one month after an incident is "too removed in time to qualify as a present sense impression"). "[T]he appropriate inquiry is whether sufficient time elapsed to have permitted reflective thought." 2 McCormick On Evid. § 271 (7th ed.).

Similarly, the excited-utterance exception involves statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The theory behind this exception "is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. Spontaneity is the key factor . . . ." *Id*. (Advisory Committee Notes) (citation omitted). There is also a time element under this exception, wherein "the standard of measurement is the duration of the state of excitement." *Id*. "The time lapse in most excited utterance cases is usually a few seconds or a few minutes" and, "[i]n extreme circumstances, [courts] have accepted delay of a few hours." *United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004) (citations omitted) (rejecting an overnight delay as too long). "Circumstances indicating a lack of spontaneity, which may be related to the self-serving character of the statement, are accordingly extremely important to the determination of

admissibility." 2 McCormick On Evid. § 270 (7th ed.). There is also no requirement that the declarant of an excited utterance be available to testify, because the underlying rationale for the exception also "suggests that testimony on the stand, given at a time when the powers of reflection and fabrication are operative, is no more (and perhaps less) reliable than the out-of-court statement." *Id.* § 272. Courts have also increasingly upheld admission of excited utterances where it constitutes "the only evidence" of the underlying startling event. Fed. R. Evid. 803(2) (Advisory Committee Notes) (collecting cases).

Ada stated in her deposition that Roberto said, "I swung and I was alright, I don't know why the back immediately after I sw[u]ng for the first time the back threw me to the floor," **ECF No. 37-3** at 5; that "the swing had thrown him," **ECF No. 37-2** at 20; that he said he fell "like a breadfruit," and "that the back rest threw him backwards," **ECF No. 48-3** at 7-8. Roberto's fall certainly constitutes a startling event of which he had firsthand knowledge and about which these statements pertain. *See United States v. Bailey*, 834 F.2d 218, 228 (1st Cir. 1987) (holding that a neighbor's attempted bribe constituted a startling event under the excited utterance framework because "[c]ommon sense suggests that a juror would be 'startled'" by it). The spontaneity and contemporaneity of these statements is also supported by the record currently available to the Court. The parties do not dispute that Roberto fell while Ada was in the restroom for a few minutes and that Ada came to his side immediately after exiting the restroom. Ada testified that Roberto made some, if not all, of the statements about the swing moments after his fall and while he remained splayed under the swing on the ground. And, even if Roberto made those

statements sometime after he turned upright, the parties dispute how dazed Roberto remained after the incident, before he lost consciousness. In other words, it is disputed as to whether, at any time after Roberto's fall and before he fell unconscious, the excitement of the incident sufficiently faded to allow him to engage in reflective thought, thereby undermining the applicability of these hearsay exceptions. When he made these statements would still be relevant and from the uncontroverted deposition testimony available, it appears he made them while he laid on the ground under the swing or shortly thereafter. Further, it appears that Roberto remained in distress while on the drive home from Sam's Club and during the brief errand at Wal-Mart. Thus, it is likely that he never had an opportunity to engage in reflective thought after the incident, rendering all of his statements to Ada about the cause of his fall admissible as excited utterances or present sense impressions. **ECF No. 48-3** at 13–16.

Wal-Mart is certainly welcome to object to the admissibility of these statements at trial and upon presentation of further information about the circumstances surrounding these statements. However, it has failed to properly controvert the evidence supporting these statements' admissibility at this stage in the proceedings. *See Puerto Rico Am. Ins.*, 603 F.3d at 130–31.

Wal-Mart also argues that plaintiff cannot prove causation or damages because the undisputed evidence shows that Roberto was uninjured from his fall, behaved normally afterwards, declined Supervisor and Assistant Manager's offers for an ambulance, and chose not to complete an incident report. **ECF No. 37-1** at 8–9. Wal-Mart also attacks Ada's credibility as

to the role the swing's construction or assembly played in Roberto's fall by pointing out alleged inconsistencies in her actions after the incident. *Id.* at 9–10.

These arguments are also unavailing. The strength of plaintiff's case is not properly adjudicated at summary judgment when there are disputed issues of material fact in favor of plaintiff's case. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and not properly before the court on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Carlson v. University of New England*, 899 F.3d 36, 43 (1st Cir. 2018). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

Plaintiff properly disputed these facts. Plaintiff explicitly asserted that no Sam's Club employee offered to call an ambulance[5] or complete an incident report. She disputes the extent Ada and Roberto discussed the swing's role in the incident with the employees that day and to what extent Roberto appeared injured after the fall. In fact, Wal-Mart's employees testified in their depositions that they saw a welt on Roberto's head after his fall and Supervisor testified that she treated him for dizziness after his fall.

Last, Wal-Mart argues that Roberto's fall was caused by his "compromised health condition," not a defect with the swing. Wal-Mart includes in its proposed statement of uncontested facts a cornucopia of health issues that Roberto allegedly had, including HIV, to suggest that these conditions must have caused his fall/death. This perfunctory assertion is both

---

[5] Interestingly, Wal-Mart's store policy discourages employees from offering to call an ambulance. **ECF No. 47-9.**

controverted by the record and constitutes an unsupported inference of a cause of death that this

Court is neither willing nor medically qualified to make. **ECF Nos. 37-7; 37-8; 48** at 12–13. This

is simply Wal-Mart's theory of the case, constituting neither evidence nor law. Moreover, Ada

testified in her deposition that, despite living with HIV for approximately twenty-nine years,

Roberto led an active and normal life; he attended church twice a week and enjoyed shopping,

walking, going out, and doing chores around the house. **ECF No. 37-2** at 9, 15. That a person has

chronic health issues, without more, does not negate plaintiff's claim that Roberto fell when the

backrest of the swung "threw [him] backwards" "like a breadfruit." Plaintiff also points out that

Wal-Mart supports this medical condition argument with seemingly unrelated emergency room

records from eight years ago, as if they presented a self-explanatory explanation for Roberto's

death, while Wal-Mart failed to address the forensic report identifying cranial cerebral trauma

as Roberto's cause of death. **ECF No. 48** at 12–13.

Additionally, as discussed below, *see supra* § IV, there is sufficient evidence in the record

for a jury to infer that Wal-Mart acted in bad faith by failing to disclose/retain investigation

documents, the swing, and all relevant surveillance footage from the day of Roberto's fall.[6] This

reasonable inference of bad faith suggests that the evidence Wal-Mart failed to preserve was

unfavorable to Wal-Mart. *See Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998); *see*

*also Schreane v. Beemon*, 575 Fed.Appx. 486, 490 (5th Cir. 2014) (per curiam) (noting that the

---

[6] The R&R did not reach the spoliation analysis or incorporate how these overlapping issues could affect the propriety of summary judgment.

availability of "[a]n adverse inference of spoliation can be relevant on summary judgment"). All reasonable inferences must be drawn in favor of the non-moving party. Plaintiff has alleged sufficient admissible evidence to substantiate her claim, and there are material disputes of fact regarding much of that evidence. Thus, Wal-Mart's motion for summary judgment is **DENIED**. **ECF No. 37**.

## V.       Spoliation Motion

In both her opposition to summary judgment and in a separate, simultaneously-filed motion, plaintiff argues that Wal-Mart intentionally failed to preserve the surveillance footage relevant to the incident, the swing, and documents of its internal investigation of the incident. Plaintiff asserts that Wal-Mart seeks to benefit from its spoliation by moving for summary judgment based on her lack of this evidence. Plaintiff requests that the Court exercise its discretion to impose sanctions against Wal-Mart, including by permitting an adverse inference jury instruction and any other remedy the Court deems appropriate. **ECF No. 47** at 16–17.

### A.       Spoliation Standard

"'Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Vélez v. Marriott PR Mgmt., Inc.*, 590 F. Supp. 2d 235, 258 (D.P.R. 2008) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). The party that puts forth the spoliation argument "must proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the [evidence's] potential relevance

to that claim." *Testa*, 144 F.3d at 177. The proponent of a spoliation claim "need not offer direct evidence of a coverup to set the stage for the adverse inference. Circumstantial evidence will suffice." *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996). The critical aspect of the notice inquiry depends "on institutional notice—the aggregate knowledge possessed by a party and its agents, servants, and employees." *Testa*, 144 F.3d at 178. *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) ("This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation.").

Upon a finding of spoliation, "a district court has broad discretion in choosing an appropriate sanction." *Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 42 (1st Cir. 2017) (citation and internal quotation marks omitted). Sanctions for spoliation serve a "prophylactic and punitive" purpose. *Nation-Wide Check Corp., Inc. v. Forest Hills Distrib., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982) (explaining that this rationale has a long history, citing *Armory v. Delamirie,* 1 Stra. 505, 93 Eng.Rep. 664 (K.B.1722)). "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Sharp*, 872 F.3d at 42 (citation and internal quotation marks omitted). One available sanction is for a court to instruct the jury that it may, but need not, "infer from a party's obliteration of [evidence] relevant to a litigated issue that the contents of the [evidence] were unfavorable to that party." *Testa,* 144 F.3d at 177 (1st Cir. 1998); *accord Gómez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012). "[A]n adverse inference instruction may be allowed when a party fails to produce [evidence]

that exists or should exist and is within its control." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 20 (1st Cir. 2009). Although the adverse inference "instruction usually makes sense only where the evidence permits a finding of bad faith destruction," a showing of bad faith is not necessarily a requirement. *United States v. Laurent*, 607 F.3d 895, 902–03 (1st Cir. 2010). Rather, "above all else an instruction must make sense in the context of the evidence." *Id*. at 903.

### B.    Spoliation Analysis

#### 1.    Notice

Plaintiff identifies three ways that Wal-Mart received notice of Roberto's fall and subsequent death to sufficiently put the company on notice of "pending or reasonably foreseeable litigation": (1) when Sam's Club employees assisted Roberto and observed his injuries moments after he fell; (2) when Sam's Club management visited Roberto's family days after his death to pay their respects and offer to help with the funeral; and (3) when Ada returned to Sam's Club shortly after Roberto's death to complete an incident report. **ECF No. 47** at 8. *See Vélez*, 590 F. Supp. 2d at 258.

In opposition, Wal-Mart asserts that it was never put on notice because it did not receive a "document retention letter" from plaintiff or her counsel, noting that plaintiff was not involved in the incident until she filed "the instant complaint." **ECF No. 54** at 9. Wal-Mart also dismisses Ada's return to Sam's Club to complete an incident report as something she needed to complete for "insurance purposes." *Id.* at 5. Last, Wal-Mart indicates that the employee responsible for the decommissioning of the swing around August 8 or 9, 2015 was unaware of Roberto's accident,

thereby absolving Wal-Mart of the responsibility to preserve the swing due to that employee's lack of notice. **ECF No. 48-1** at 14–15.

The Court finds that sufficient evidence supports plaintiff's assertion that Wal-Mart was put on "institutional notice" of "pending or reasonably foreseeable litigation," within time to preserve the evidence at issue. The Court finds particularly convincing plaintiff's argument that Wal-Mart received the relevant notice when Sam's Club management learned of Roberto's death and offered to help with the funeral. *See Testa*, 144 F.3d at 178. It takes no leap of the imagination to consider litigation "reasonably foreseeable" upon learning that a patron died after sitting on, falling from, and landing underneath, a patio swing in one of Wal-Mart's stores. Manager stated in his deposition, "As a general manager, it was an incident that occurred in my club, and I thought that it was the right thing to go to them, and place myself at their disposal, if I could help them in any way." **ECF No. 47-1** at 7. He recalled Ada telling him while he visited her home that the swing was defective and had caused Roberto's fall. **ECF No. 48-1** at 11. And, although Manager denied being able to "establish a link of [Roberto's] death with the fall[] . . . at that time," he nonetheless recognized that the precipitating cause of Roberto's death may have been the fall that occurred in his store. **ECF Nos. 47-1** at 7, 18; **48-1** at 11. Whether, during Manager's visit with Roberto's family, the family spelled out their interest in pursuing litigation in unequivocal terms, while mourning their sudden and tragic loss, is not the standard for notice under this framework. Similarly, Ada's intention in completing an incident report—for "insurance purposes"—after Roberto's death hardly refutes plaintiff's assertion that it put Wal-

Mart on notice under the spoliation standard. And, Wal-Mart's attempt to blame the swing's

destruction on one employee's purported lack of knowledge does not negate its "institutional

notice" to ensure the swing is preserved from, i.e., an unaware employee's routine destruction

of the swing. *See Testa*, 144 F.3d at 177–78 (rejecting Wal-Mart's defense that the employee

responsible for the destruction of evidence was unaware of the plaintiff's injury as insufficient

to "dictate the resolution" of the dispute). Wal-Mart's retention-letter argument also rings

hollow. It need not anticipate *who* in Roberto's surviving family may file a lawsuit to be held to

having notice of reasonably foreseeable litigation. Wal-Mart knew of Ada's involvement at the

scene of Roberto's fall and her relationship to Roberto. Thus, from day one, it could have

anticipated Ada filing a lawsuit, which, as it turns out, she did file in the Puerto Rico Court of

First Instance in Humacao. *See* **ECF No. 48-1** at 1.

> **2.**        **Relevance**

Wal-Mart raises several notable challenges to the relevance of the surveillance footage,

swing, and investigation reports. The Court addresses each argument in turn.

> **a.**        **The Surveillance Footage**

Wal-Mart argues that it never possessed the surveillance footage at issue and therefore

cannot be sanctioned for destroying evidence that did not exist. Wal-Mart explains that, "there

was no camera view" of the area where Roberto's fall occurred. **ECF Nos. 48-1** at 4, 8, 10; **54** at 8.

Plaintiff asserts that Wal-Mart's explanation fails to account for footage from any other security

cameras in the store that may have captured relevant evidence, e.g., of Roberto's gait before and after his fall. **ECF No. 48-1** at 5.

Manager explained during his deposition that he asked an employee by the name of Josué to investigate the surveillance footage shortly after Roberto's fall. Manager stated that Josué concluded there was no footage of the accident because there were no cameras pointed in the direction of the swing.[7] **ECF No. 48-1** at 4–7. Manager described the store as having many surveillance cameras, some of which swivel, but he did not specify what type of cameras were installed in the area of the swing, how many, or where they were pointed except there was "no view towards that area." *Id*. He noted that the swing was located in the "seasonal area" which was "in front of the cash registers" and near the entrance, and that the store maintains fixed cameras at the registers and some swiveling cameras in the parking area. *Id*. at 7. Manager also stated that he did not specifically ask Josué to look for footage depicting Roberto's gait even though Manager knew that Roberto may have been limping and clutching his stomach after the fall. **ECF Nos. 47-1** at 15; **48-1** at 4–5. He did not ask Josué to preserve any of the footage from the day of the fall because Josué said there was "no camera view." **ECF No. 48-1** at 11. He also suggested that the footage could have been "lost" in the process of Josué "leaving" and that he was unsure if anyone completed Josue's investigation of the surveillance footage upon Josué's

---

[7] An Asset Protection Manager confirmed Josué's assessment in an affidavit appended to Wal-Mart's opposition to plaintiff's motion for spoliation. **ECF No. 54-1**. The Asset Protection Manager stated in her affidavit that she had viewed the surveillance footage sometime after Roberto's fall. *Id*. She concluded that there was no recording of "the accident area on July 14, 2015," and therefore "no videos were preserved." *Id*. She executed this affidavit two-and-a-half years after the incident. *Id*.

departure.[8] *Id.* at 6, 11. Additionally, Manager testified that "there is a double file kept of the recordings," with one copy retained in the store and the other "at CMI,"[9] but that he had no explanation as to why there was no footage, a backup copy or original copy, retained in this case in any location. *Id.* at 7–9. Manager also did not personally view or reexamine any footage, despite having access to the system. *Id.* at 4–5, 9. He explained that although the footage was now no longer available in the store, he could access a copy from CMI by submitting a request. *Id.* at 5–6. Later, he testified that there was no way he could access any footage. *Id.* at 7–9.

A factfinder could reasonably conclude that no footage of Roberto's fall existed but that other footage relevant to plaintiff's claim, i.e., depicting Roberto's injuries (or lack thereof), did exist and Wal-Mart failed to look for it or preserve it. Whether this failure was negligent versus intentional, remains to be seen. A jury could deem Wal-Mart's inquiry sufficient and that it erased the remainder of the footage in accordance with its business practices. Manager's testimony is, however, conflicting and unclear, leaving room for a fact finder to infer obfuscation and bad faith. *See Blinzler*, 81 F.3d at 1159 ("When the evidence indicates that a party is aware of circumstances that are likely to give rise to future litigation and yet destroys potentially relevant records without particularized inquiry, a factfinder may reasonably infer that the party probably did so because the records would harm its case.").

---

[8] Manager does not explain whether Josué left the company, left the department, left to work at a different Sam's Club, etc., nor the date on which he left.

[9] "CMI" appears to stand for "Claims Management Inc." *See* **ECF No. 47-10** at 1.

### b.    The Swing

Wal-Mart argues that the swing cannot form the basis of plaintiff's spoliation claim because the swing's relevance to Roberto's fall is speculative; she "does not know what caused the accident." **ECF No. 54** at 1–2. According to Wal-Mart, plaintiff needs to successfully prove negligence before she is entitled to a spoliation argument. *Id.* at 2. Wal-Mart also suggests that because its inspection of the swing showed no signs of defect, the swing is not relevant to plaintiff's claim.

Wal-Mart's interpretation of the spoliation rule swallows the purpose of the rule. Plaintiff must provide evidence sufficient for a fact finder to determine (1) notice of "reasonably foreseeable litigation" and (2) the spoiled evidence's "potential relevance" to the claim. Plaintiff has a claim, as sustained above, and Wal-Mart's attempt to gut the claim by relying on its failures to preserve is unpersuasive. Likewise, Wal-Mart's assurances that the swing is not relevant because its employee(s) inspected it and found nothing wrong, is putting the cart before the horse. The relevance of the swing to plaintiff's claim is not contingent on Wal-Mart's theory of the case or its self-serving assertions that the swing was fine.

Moreover, Wal-Mart's inspection of the swing hardly inspires confidence, seemingly amounting to a proverbial "kicking of its tires." Manager testified in his deposition that he inspected the swing around July 17, 2015,[10] stating, "I did not have the assembly instructions. I just checked to see if it was solid, and that it was in perfect condition." **ECF No. 48-1** at 11, 13,

---

[10] This inspection took place two days after Roberto's accident.

16. Manager also did not know who originally assembled the swing, as that is information Sam's Club does not retain. **ECF Nos. 48-1** at 13; **48-7** at 19–20. He also clarified that he has no specific skills in swing construction. **ECF No. 47-1** at 22–23. Manager testified, "There was no visible defect. It did not feel weird, there [were] no broken pieces of wood, the structure was completely functional and whole." *Id.* at 23. Manager stated he was accompanied by Assistant Manager, an individual from Asset Protection, and Supervisor and that they concluded that the swing had worn paint and no other problems. **ECF No. 48-7** at 16. Somewhat confusingly, he also testified that he reviewed the swing on his own. **ECF No. 47-1** at 22–23. It is unclear if Manager inspected the swing once or twice or simply does not have a strong memory of it either way.

The swing's relevance is glaringly obvious. Roberto died after sitting on and falling from the swing. He allegedly told Ada, apparently the last person he spoke to before dying, that a problem with the swing caused him to fall. Ada communicated that to Wal-Mart management when they visited her house to offer their condolences and to help with Roberto's funeral. Thus, the relevance of the swing and Wal-Mart's notice of its relevance were communicated to Wal-Mart within days of Roberto's fall (if not earlier), and with ample time for Wal-Mart to secure the swing.

Wal-Mart next asserts that its decommissioning of the swing was, at the most, negligent. Therefore, plaintiff cannot show bad faith to warrant an adverse inference instruction. **ECF No. 54** at 11. Wal-Mart explained that, after Roberto's fall, the swing remained in place on the store floor, with the seat of the swing raised to prevent patrons from sitting on it. **ECF No. 47-3** at 22.

About three weeks after Roberto's fall, on August 8 or 9, 2015, Waleska Calvo, an Overnight Assistant Shift Manager ("Night Manager"), "decommissioned" the swing in the exercise of her normal duties and discretion to determine when to change the store's displays. **ECF No. 48-1** at 14–15. She apparently ordered the swing's decommissioning in light of visible wear to its paint job, although she had the option of selling the display. *Id.* at 13–14. Wal-Mart offers no explanation as to why Night Manager chose to destroy the swing rather than sell it, other than she had the discretion to do so. *Id*. Wal-Mart notes that because Night Manager worked an overnight shift, she "did not meet the people who work[ed] during the day," suggesting that she remained ignorant of Roberto's fall. **ECF No. 54** at 11, 13. Wal-Mart also submitted an affidavit signed by Night Manager, dated two-and-a-half years after Roberto's fall, indicating that she remembered decommissioning the swing for aesthetic reasons and that she was unaware of Roberto's accident at that time she decommissioned it. **ECF No. 54-2**.

The Court finds there is sufficient evidence for a jury to find bad faith by Wal-Mart in relation to its treatment of the swing. Wal-Mart's claim that Night Manager coincidentally decommissioned the swing within a month of Roberto's fall and death is fairly inconceivable, and Night Manager's assurances in an affidavit dated two-and-a-half years afterwards could be reasonably disregarded as unreliable. *Id.* Most importantly, however, Night Manager's mental state at the time she decommissioned the swing does not negate Wal-Mart's responsibility to preserve evidence upon notice of potential litigation. *See Testa*, 144 F.3d at 177–78. The institutional notice imputed to Wal-Mart requires it to ensure its left hand knows what its right

hand is doing. Whether Wal-Mart opted to be discreet and not inform Night Manager of the incident, an argument Wal-Mart does not raise, also offers little explanation for why the swing remained on display in the storefront for weeks after the incident, subject to tampering by patrons and decommissioning by unwitting night managers. Indeed, this preservation requirement is squarely stated within Wal-Mart's store policy, requiring that evidence of a claim "be secured at store level in case the claim becomes litigated," and to store the evidence in a location that will ensure it is "not be destroyed, damaged or tampered with." **ECF No. 48-8**

### c.      The Investigation Evidence

Wal-Mart characterizes plaintiff's argument that it failed to preserve documentation of its internal investigation as an attempt to impose on it the duty to collect evidence on plaintiff's behalf. **ECF No. 54** at 9. Wal-Mart asserts that it did not conduct an investigation into Roberto's fall because Ada and Roberto refused to complete an incident report on the day of the fall. *Id.* at 9–10. Thus, as with the surveillance footage, Wal-Mart concludes that it cannot be sanctioned for failing to preserve that which did not exist.

This argument is disingenuous. Ada *did* complete an incident report, albeit sometime after the fall, a distinction that Wal-Mart does not assert as relevant. And, Manager affirmatively stated at various points, that *he participated in the investigation into Roberto's fall. See, e.g.,* **ECF Nos. 47-1** at 11; **47-3** at 9, 11, 14–16; **48-1** at 11; **48-7** at 9, 15. What's more, he described the investigation in some detail in both his deposition and in answers to interrogatories, stating that he conducted the investigation "as part of the ordinary process and regular course of business done at the

store." **ECF No. 48-7** at 15. Supervisor, Assistant Manager, and an individual from Asset Protection aided him in the investigation. *Id..* Manager indicated he spoke with Supervisor, Ada, and other individuals in conjunction with the investigation. **ECF No. 47-1** at 4–6, 8–9, 14. His investigation included an inspection of the swing. **ECF No. 48-7** at 15. His conclusions from the investigation were that Roberto "had several medical conditions therefore he was weak and was not supposed to be left unattended at the store" and "that the Pergola Swing was not defective and had nothing to do with [Roberto's] fall." *Id.* Additionally, Manager stated that he sent a memorandum by email[11] summarizing his conversations with Ada, but Wal-Mart did not include the email in its case file or otherwise save it because it "was just a follow-up." **ECF No. 47-1** at 4–6. He also indicated that he prepared a report summarizing his investigation and other conversations he had in conjunction with Roberto's fall.[12] *Id.* at 9, 14.

In other words, Manager stated in a deposition and answers to an interrogatory that: (1) he and his staff conducted an investigation, and (2) he created at least two documents in relation to that investigation. Wal-Mart, on the other hand, argues in its opposition to spoliation sanctions that no investigation occurred and, in fact, its nonoccurrence is Ada and Roberto's fault. The Court is not persuaded by Wal-Mart's brazen double-talk. There is ample evidence for the fact finder to conclude that an investigation occurred, generating at least some

---

[11] The deposition identifies the recipient of the email communication as Mr. Juan Lozada. It is unclear from the partial deposition transcript available in the record what Mr. Lozada's relationship is to the case. **ECF No. 47-1** at 3, 7.

[12] Manager apparently did not learn of Roberto's death until he received a text message on July 17, 2015, from the manager of the Ponce Sam's Club, who worked with one of Roberto's relatives. **ECF No. 47-1** at 8–9.

documentation, all of which Wal-Mart was on notice to keep safely stored for reasonably

foreseeable litigation. Likewise, there is ample evidence for the fact finder to conclude that Wal-

Mart's reasoning for failure to provide or preserve this information exhibits bad faith.

### C.    Spoliation Sanctions

"A district court has wide discretion in choosing sanctions for discovery violations."

*Fernández-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 320 (1st Cir. 2015) (citation and internal

quotation marks omitted). "A 'spoliation' instruction, allowing an adverse inference, is

commonly appropriate in both civil and criminal cases where there is evidence from which a

reasonable jury might conclude that evidence favorable to one side was destroyed by the other."

*Laurent*, 607 F.3d at 902. *See Nation-Wide Check,* 692 F.2d at 218 ("The fact of destruction satisfies

the minimum requirement of relevance: it has some tendency, however small, to make the

existence of a fact at issue more probable than it would otherwise be." (citing Fed. R. Evid. 401)).

This sanctioning authority arises from Rule 37 of the Federal Rules of Civil Procedure and

the Court's inherent power to manage its own affairs.[13] Fed. R. Civ. P. 37; *In re Plaza-Martínez*,

747 F.3d 10, 13 (1st Cir. 2014); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980), *superseded by*

*statute on other grounds, as recognized in Morris v. Adams-Millis Corp*, 758 F.2d 1352 (10th Cir. 1985).

---

[13] Wal-Mart argues that the remedies plaintiff seeks under Rule 37(e) are inapplicable because that rule applies exclusively to electronically stored information. **ECF No. 54** at 13. Wal-Mart does not clarify how the surveillance footage, emails generated, or investigation documents do not constitute electronically stored information. And, even if those items somehow did not constitute electronically stored information, like the swing, a federal court may sanction a litigant in accordance with the court's inherent powers. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991) (recognizing that "simply because [bad] conduct could also be sanctioned under [a] statute or the [Federal] Rules" does not divest the court of its inherent powers).

"Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp.*, 447 U.S. at 763–64 (citation and internal quotation marks omitted). Likewise, a district court's inherent powers "includ[e] the ability to do whatever is reasonably necessary to deter abuse of the judicial process" *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 19–20 (1st Cir. 1991) (citation and internal quotation marks omitted). *See* Jamie S. Gorelick, et al., *Destruction of Evidence* § 3.5 (2018) (noting that "the power to discipline for 'rude and contumelious behavior must necessarily be as ancient as the laws themselves. For laws without a competent authority to secure their administration from disobedience and contempt would be vain and nugatory'" (quoting 4 W. Blackstone, Commentaries 282 (1765))). However, "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Exp.*, 447 U.S. at 764; *accord In re Plaza-Martínez*, 747 F.3d at 14 (noting that "sanctions are a badge of reprobation that can haunt an attorney throughout his or her career"). The best practice for a court considering sanctions is to ensure the offending party has an opportunity to be heard before sanctions are imposed. *In re Plaza-Martínez*, 747 F.3d at 14.

In addition, "[t]here are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel," such as when a party engages in "abusive litigation practices," "abuse [of] judicial processes," and "'[b]ad faith' . . . in the conduct of the litigation." *Roadway Exp.*, 447 U.S. at 765–66 (collecting

cases); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (upholding the imposition of sanctions when "a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled," noting that "[t]he imposition of sanctions in [that] instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicate[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy" (alterations in original) (citations and internal quotation marks omitted)); *F.A.C., Inc. v. Cooperativa De Seguros De Vida De P.R.*, 563 F.3d 1, 6–7 (1st Cir. 2009) (recognizing that a court can impose sanctions if it finds that a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

The Court believes that Wal-Mart's conduct and arguments are not sound, bordering on disingenuous, and sanctions are accordingly warranted. Wal-Mart had an opportunity be heard, having responded to plaintiff's spoliation motion and plaintiff's spoliation arguments contained in her summary judgment opposition. **ECF Nos. 54**, **55**. Plaintiff requested the spoliation sanctions of an adverse inference jury instruction, entry of default judgment, prohibition of Wal-Mart's affirmative defenses, and "any other relief that [the Court] deems just and proper." **ECF No. 47** at 17.

The evidence presented to the Court shows that Manager and Supervisor, and therefore Wal-Mart, had notice of reasonably foreseeable litigation upon their visit with Roberto's family shortly after Roberto's death. Manager and Supervisor went to Roberto's home to offer to help

pay for his funeral, at which time Ada told them that she attributed Roberto's death to a problem with the swing. Manager conducted an investigation and memorialized at least parts of his investigation in writing, such as his interviews with other employees and Ada. Wal-Mart now claims no investigation occurred and, remarkably, that its nonoccurrence is Roberto and Ada's fault. Not only does this demonstrate that Wal-Mart failed to preserve/provide investigation evidence, but it also strongly supports that it did so deliberately.

Wal-Mart also affirmatively failed to preserve the swing. Indeed, Wal-Mart does not argue that it failed to preserve the swing, just that its failure is excusable. The Court disagrees and finds that Wal-Mart's failure to preserve the swing is both inexcusable and strongly indicative of bad faith. Wal-Mart cannot abdicate itself of its duty to preserve the swing based on Manager's cursory inspection of the swing or Night Manager's purported ignorance of the incident. Night Manager's ignorance is both inconceivable given the extraordinariness of the situation, and dubious in light of her unexplained decision to discard the swing, rather than sell it, within a few weeks of Roberto's fall for something as superficial as worn paint.

The surveillance video issue is a closer call. Manager's testimony was contradictory as to whether: (1) someone reviewed all of the relevant footage, (2) the footage review was completed and, (3) there is, or ever was, a backup copy of the footage somewhere, (a) why it was not retained or, (b) why it was not created. This confusion could support a conclusion of negligence or purposeful obfuscation. The Court is not willing to rule out the latter at this stage, particularly in light of the totality of the circumstances at hand. The fact that there are *three* categories of

missing evidence at issue has somewhat of a "synergistic effect." *See Blinzler*, 81 F.3d at 1159. The unavailability of so much evidence that was exclusively in Wal-Mart's control, all of which bear upon the ultimate issue of what caused Roberto's fall, suggests that the unavailability results from "something more than a coincidence." *See id.* (involving the allegedly routine destruction of two important documents central to plaintiff's case).

The Court recognizes that Wal-Mart's rejoinders—that all of the evidence at issue either did not exist or was "destroyed in the ordinary course of business, pursuant to routine practice"—are material to the factfinder's inquiry. *See Testa*, 144 F.3d at 177. However, "the mere introduction of [this explanation] neither removes the question from the jury's ken nor precludes the jury from drawing a negative inference." *See id.*; *accord Nation-Wide*, 692 F.2d at 219.

The Court is also concerned by Wal-Mart's apparent track record of having spoliation sanctions imposed on it with alarming frequency and under strikingly similar circumstances. *See, e.g., Testa*, 144 F.3d at 177–78 (spoliation sanction of adverse inference instruction upheld based on Wal-Mart's failure to preserve relevant records); *McAdoo v. Wal-Mart Stores East, L.P.*, 2017 WL 3581096, at *3 n.2 (M.D. Tenn. Aug. 18, 2017) (noting plaintiff may be entitled to a spoliation instruction at trial for Wal-Mart's alleged failure to preserve the gel that allegedly caused her fall but rejecting plaintiff's motion for more severe sanctions); *Stedeford v. Wal-Mart Stores, Inc.* 2016 WL 3462132, at *2, 9–10 (D. Nev. Jun. 24, 2016) (slip copy) (granting sanctions for spoliation based on Wal-Mart's provision of video footage that "abruptly ends before Plaintiff's fall," finding that "Wal-Mart failed to preserve video surveillance evidence and destroyed the

soap bottle [central to plaintiff's case] after it was on notice of [plaintiff's] reasonably foreseeable claim"); *Thaqi v. Wal-Mart Stores East, LP*, 2014 WL 1330925, at *6, 10 (E.D. N.Y Mar. 31, 2014) (mem.) (holding that "[b]ecause the record would allow a jury to draw an adverse inference against Wal–Mart concerning spoliation [of relevant video evidence], Wal–Mart's summary judgment motion must be denied"); *Abdulahi v. Wal-Mart Stores East, L.P.*, 76 F. Supp. 3d 1393, 1397–98 (N.D. Ga. 2014) (imposing an adverse inference jury instruction and attorney fees for spoliation based on Wal-Mart's deletion of surveillance footage, and rejecting Wal-Mart's assertion that its employee considered the video unhelpful as self-serving and not a sufficient replacement for the video itself); *Mousa v. Wal-Mart Stores East, LP*, 2013 WL 5352949, at *10–12 (E.D. Mich. Sept. 23, 2013) (deferring ruling on whether an adverse inference instruction is warranted based on Wal-Mart's selective preservation of some relevant surveillance and CC-TV footage, but not all of it); *Patton v. Wal-Mart Stores, Inc.*, 2013 WL 6158467, at *6–9 (D. Nev. Nov. 20, 2013) (permitting an adverse inference jury instruction after concluding that Wal-Mart intentionally destroyed surveillance footage relevant to plaintiff's negligence claim); *Pope v. Wal-Mart Stores East, LP*, 2013 WL 12086325, at *11 (N.D. Ga. Nov. 12, 2013) (finding that a disputed issue of material fact precluded summary judgment in light of the adverse inference supported by Wal-Mart's questionable disposal of relevant video surveillance); *Woodard v. Wal-Mart Stores East, LP*, 801 F. Supp. 2d 1363, 1368, 1376 (M.D. Ga. 2011) (allowing to go to the jury for a determination of bad faith the fact that Wal-Mart preserved the wrong video footage and its claims adjuster failed to review the tape until after Wal-Mart had recorded over the pertinent

footage); *Britton v. Wal-Mart Stores East, L.P.*, 2011 WL 3236189, at *3, 5, 9, 14 (N.D. Fla. Jun. 8, 2011) (R&R) (recommending sanctions for spoliation of evidence, finding that Wal-Mart selectively and self-servingly preserved only defensive evidence, allowing other footage damaging to its defense to be overwritten, despite a responding police officer's instruction on the day of the incident to preserve all surveillance video of the plaintiffs from that day and receipt of multiple preservation requests, including one hand-delivered, from plaintiffs' attorney shortly after the incident); *Gaffield v. Wal-Mart Stores East, LP*, 616 F. Supp. 2d 329, 332–33, 340 (N.D. N.Y. 2009) (mem.) (imposing spoliation sanctions for failure to preserve bike pedal involved in plaintiff's injury, requiring Wal-Mart to pay all of the expert witness fees incurred by the moving party); *Stoner v. Wal-Mart Stores, Inc.*, 2008 WL 3876077, at *2–4 (C.D. Ill. Aug. 18, 2008) (describing plaintiff as adequately pleading a separate claim for the tort of negligent spoliation based on his allegation that Wal-Mart recorded over the footage of his fall, retaining only the footage of plaintiff on the ground after his fall, and failed to retain the sign plaintiff allegedly tripped on); *McDonald v. Wal-Mart Stores East, LP*, 2008 WL 153783, at *1, 4–7 (E.D. Va. Jan. 14, 2008) (mem.) (allowing an adverse inference instruction based on the court's finding that Wal-Mart intentionally destroyed the plastic wrap that allegedly caused plaintiff's fall); *Turner v. Wal-Mart Stores East, L.P.*, 2007 WL 2872419, at *6–7 (S.D. Miss. Sept. 26, 2007) (reserving for adjudication at trial plaintiff's allegation that she is entitled to a negative inference because Wal-Mart intentionally deleted relevant video footage); *Welch v. Wal-Mart Stores, Inc.*, 2004 WL 1510021, at *4 (N.D. Ill. July 1, 2004) (holding that plaintiff adequately pleaded a tort claim for

intentional spoliation against Wal-Mart in which she alleged that Wal-Mart purposefully disposed of relevant video footage); *Stahl v. Wal-Mart Stores, Inc.*, 47 F.Supp.2d 783, 784, 787 (S.D. Miss. 1998) (mem.) (ruling that genuine issues of material fact existed as to whether Wal-Mart exhibited bad faith when it disposed of the leaking bottle central to plaintiff's slip and fall claim, precluding summary judgment); *Davis v. Wal-Mart Stores, Inc.*, 756 N.E.2d 657, 658–60 (Ohio 2001) (permitting adjudication of plaintiff's claims of spoliation that accused Wal-Mart of withholding evidence and its employees of falsifying testimony); *Monroe Johnson v. Wal-Mart Stores, Inc.*, 1999 WL 35238334 (Tex. Dist. Ct. Aug. 20, 1999) (permitting a spoliation charge where, days after five or six wooden reindeer that weighed five to ten pounds each fell on plaintiff's head, neck, and shoulders, Wal-Mart sold the reindeer and alleged that the reindeer were made of papier-mâché and weighed only ounces).

Regardless of this history of sanctions for similar misconduct, sanctions are warranted in this case based on the egregiousness of Wal-Mart's actions described herein, i.e., failure to preserve the swing, video footage, and investigation documents.

Accordingly, the Court finds the following:

1) Wal-Mart had an opportunity be heard in this matter, having responded to plaintiff's spoliation motion and plaintiff's spoliation arguments contained in her summary judgment opposition. **ECF Nos. 54, 55**. *In re Plaza-Martínez*, 747 F.3d at 14. Plaintiff requested spoliation sanctions including an adverse inference instruction and "any other relief that [the Court] deems just and proper." **ECF No. 47**.

2) Wal-Mart intentionally destroyed investigation evidence.

3) Wal-Mart intentionally destroyed the swing a short period after the accident and upon becoming aware of a possible legal claim.

4) Wal-Mart's treatment of the surveillance footage supports a finding of bad faith.

5) An adverse inference instruction is an appropriate sanction for Wal-Mart's treatment of all three pieces of unavailable evidence—the surveillance footage, the swing, and the investigation documents.

6) Wal-Mart's reprehensible treatment of the investigation documents and the swing requires further sanctioning. The appropriate sanction is for Wal-Mart to pay plaintiff's attorney fees and costs associated with litigating the spoliation matter.

In light of the above, the Court **ORDERS** as follows:

1) Plaintiff shall propose an adverse inference instruction before trial.

2) Wal-Mart shall pay plaintiff's attorney fees and costs associated with litigating the spoliation matter. Plaintiff shall submit an itemized account of her relevant costs and attorney fees to the Court within 15 days from the date of this order.

3) The parties shall propose dates for a mandatory settlement conference with the Court. The parties shall submit these dates within 20 days of the date of this order.

**VI.    Conclusion**

The R&R is **REJECTED**. **ECF No. 69**. Wal-Mart's motion for summary judgment is **DENIED**. **ECF No. 37**. Plaintiff's motion for sanctions is **GRANTED**. **ECF No. 47**. Plaintiff shall

provide the Court with an accounting of its costs arising from litigating the spoliation matters within 15 days of the date of this order.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of September, 2018.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**